# United States Court of Appeals for the Federal Circuit

---

**JOHN L. GUILLORY,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7047

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 06-2926, Judge Lawrence B. Hagel.

---

Decided: January 3, 2012

---

MARK A. DELPHIN, Delphin Law Offices, PC, of Lake Charles, Louisiana, for claimant-appellant.

SCOTT D. AUSTIN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy

Assistant General Counsel, and BRIAN D. GRIFFIN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before LINN, DYK, and REYNA, *Circuit Judges*.

DYK, *Circuit Judge*.

John L. Guillory ("Guillory") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed the Board of Veterans' Appeals ("the Board") decision finding no clear and unmistakable error ("CUE") in decisions declining to award him additional special monthly compensation for aid and attendance retroactive to 1966. *Guillory v. Shinseki*, No. 06-2926, 2010 WL 4239763 (Vet. App. Oct. 28, 2010). We affirm.

BACKGROUND

This is the second appeal arising from this case and the background is set forth in more detail in this court's previous decision. *Guillory v. Shinseki*, 603 F.3d 981, 984–86 (Fed. Cir. 2010) ("*Guillory I*"). In short, Guillory asserted that as a result of service-related injuries, he suffered, inter alia, complete loss of use of his entire right arm and of both legs from the waist down, as well as injuries to his buttocks, thighs, hips, and torso. He was honorably discharged on October 27, 1966. In a June 1967 regional office ("RO") decision, Guillory was awarded, effective on the date of his discharge, compensation at the total disability rate under 38 U.S.C. § 314(j) (1964),[1] additional special monthly compensation at the

———————————

[1] At the time of Guillory's first claim for disability compensation, the statutory provision governing disability compensation was found at 38 U.S.C. § 314 (1964). This provision was subsequently recodified at 38 U.S.C. § 1114.

rate between subsections (*l*) and (m), and an award under subsection (k). The RO did not award Guillory aid and attendance because the law in 1967 required the veteran to have a special monthly compensation rating of (*o*) to be eligible. 38 U.S.C. § 314(r) (1964). In 1970, the RO determined that there was CUE in the 1967 decision and awarded Guillory special monthly compensation under subsection (m) based on the loss of use of his legs in addition to an award under subsection (k) for the loss of use of his right hand, retroactive to October 27, 1966. Guillory nonetheless fell short of the (*o*) rating required for aid and attendance at that time.

Over the next decade, due to intervening changes in the law, Guillory's rating increased two half-steps to the rate under subsection (n). In 1979, the law was amended to provide that a veteran is eligible for aid and attendance if he is entitled to receive either (1) at least the rate under subsection (*o*) or (2) the intermediate rate between subsections (n) and (*o*) (sometimes referred to as "(n ½)") and a separate award under subsection (k). Veterans' Disability Compensation and Survivors' Benefits Amendments of 1979, Pub. L. No. 96-128, § 104, 93 Stat. 982, 984. Guillory's case was not reviewed again until 1992, at which time the RO granted service connection for a seizure disorder and awarded Guillory a 100% disability rating. Because this additional independent disability qualified Guillory for a full-step increase in his special monthly compensation rating from (n) to (*o*) pursuant to 38 C.F.R. § 3.350(f)(4), and because he was receiving compensation under subsection (k), he was then eligible

---

Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5, 105 Stat. 378, 406 (1991). Throughout the opinion, we cite to the statutes applicable as of the date of the relevant RO decision.

for and was awarded aid and attendance under subsection (r), effective May 1991, the date of the seizure diagnosis.

In September 2001, Guillory asserted a claim of CUE based on the RO's failure to award him special monthly compensation for aid and attendance effective the date of his original rating in 1966. He appealed an adverse RO decision to the Board in 2003, making two specific claims for earlier entitlement to aid and attendance. First, Guillory argued that the date of onset for his seizure disorder was earlier than May 1991. Second, he argued that the ratings in the initial 1967 RO decision did not properly account for the loss of use of his right and left trunk through the knee and buttocks. The Board concluded in its 2003 decision that the various ratings decisions in Guillory's case were not the product of CUE. On appeal, the Veterans Court remanded for further consideration of both of Guillory's claims.

In its 2006 remand decision, the Board again refused to assign an effective date for aid and attendance before May 1991, holding that there was no CUE in the refusal to grant an earlier effective date for his seizure disorder. The Board, however, did not specifically address Guillory's second claim related to the additional injuries to his trunk and buttocks. On appeal, the Veterans Court held that it did not have jurisdiction over Guillory's claims of CUE for the RO's failure to independently rate him for his additional injuries because the issue had not been preserved.

In *Guillory I*, we reversed the Veterans Court's decision that it lacked jurisdiction. 603 F.3d at 986–87. We held that Guillory had in fact always maintained, and the Board had addressed in its 2003 decision, "the contention that he was mistakenly rated independent of the seizure disorder, due to the loss of use of his right and left trunk

through knee and buttocks, thus entitling him to a higher rating retroactive to 1966." *Id.* at 987. We remanded to the Veterans Court to address this claim on the merits. *Id.*

On remand, the Veterans Court considered Guillory's arguments but found that it was "clear from the Board's discussion that the prior regional office decisions accounted for Mr. Guillory's complaints regarding the loss of use of his right and left trunk through the knees, including the buttocks, when they evaluated his condition under subsection (m)." *Guillory*, 2010 WL 4239763, at *7. The Veterans Court held that because "Mr. Guillory's arguments amount[ed] only to a disagreement with how the facts were weighed by the regional office," "the Board's finding of no clear and unmistakable error in the previous regional office decision[] [was] not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and [was] supported by an adequate statement of reasons or bases." *Id.* at *8 (quoting 38 U.S.C. § 7261(a)(3)(A)).

Guillory timely appealed the Veterans Court's decision, and jurisdiction is asserted under 38 U.S.C. § 7292(a).

DISCUSSION

I

At the outset, the VA challenges our jurisdiction over this appeal. Pursuant to 38 U.S.C. § 7292(a), as amended in 2002, this court has appellate jurisdiction "with respect to the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." Despite the VA's arguments to the contrary, Guillory makes arguments concerning the

interpretation of the governing disability compensation statutes and regulations in his favor. Because "the decision below regarding a governing rule of law would have been altered by adopting the position being urged [by Guillory], this court has ['rule of law'] jurisdiction to entertain the matter." *Wilson v. Principi*, 391 F.3d 1203, 1208 (Fed. Cir. 2004) (quoting *Morgan v. Principi*, 327 F.3d 1357, 1363 (Fed. Cir. 2003)). Accordingly, this court may decide all relevant questions of law, 38 U.S.C. § 7292(d)(1), and legal determinations of the Veterans Court are reviewed de novo. *Willsey v. Peake*, 535 F.3d 1368, 1372 (Fed. Cir. 2008).

II

The issue is whether the Veterans Court correctly interpreted the disability compensation scheme in determining that there was no CUE in the decision to deny Guillory aid-and-attendance benefits back to 1966, not whether the application of the law to the particular facts of this case was correct. *See Willsey*, 535 F.3d at 1372. In 1967, when Guillory first filed a claim for compensation under the VA's disability compensation scheme, the statute governing aid and attendance provided: "If any veteran, otherwise entitled to the compensation authorized under subsection (*o*) of this section . . . is in need of regular aid and attendance, he shall be paid, in addition to such compensation, a monthly aid and attendance allowance . . . ." 38 U.S.C. § 314(r) (1964). The VA does not dispute that, as early as 1966, the evidence demonstrated that Guillory was "in need of regular aid and attendance." Resp't-Appellee's Br. 39. The parties disagree, however, as to whether the other statutory criteria were met at that time.

Guillory makes two primary arguments that he met the statutory requirements for aid and attendance in 1967

and thus that the initial 1967 RO decision was the product of CUE. First, Guillory argues that in 1967 he should have qualified for the rate under subsection (*o*), and thus aid and attendance, because he "suffered disability under conditions which would entitle him to two or more of the rates provided in one or more subsections (*l*) through (n) of [§ 314], no condition being considered twice in the determination." 38 U.S.C. § 314(*o*) (1964). Specifically, he argues that he was entitled to at least two of the following rates: (1) a rate under subsection (*l*) for having lost a hand and a foot; (2) a rate under subsection (m) for having suffered the loss of use of "two extremities [his legs] . . . preventing natural . . . knee action with prosthesis in place"; and (3) a rate under subsection (n) for having lost "two extremities [i.e., his legs] so near the . . . hip as to prevent the use of a prosthetic appliance."[2] *See id.* § 314(*l*)–(n). Guillory asserts that, under a proper interpretation of subsection (*o*), these awards would not be duplicative.

This issue turns on whether the restriction in subsection (*o*) that "no condition be[] considered twice" should be interpreted to allow a veteran to recover separately for

---

[2]    Guillory also alleges CUE in the 1967 RO decision because he was originally awarded for only the loss of use of one hand and one foot. This error, however, was already corrected in subsequent RO decisions that found CUE in the 1967 decision, and Guillory was awarded benefits retroactively to October 27, 1966, the date of his discharge. *See Guillory v. Peake*, No. 06-2926, 2008 WL 5155291, at *1 (Vet. App. Dec. 9, 2008). When it is found that a decision by an RO contains CUE, it is "revised" to correct the error and it "has the same effect as if the decision had been made on the date of the prior decision." 38 U.S.C. § 5109A(a)–(b). When the RO found CUE in its 1967 decision, the decision was effectively revised to no longer contain the error. Thus, the 1967 RO decision no longer contains this error alleged by Guillory.

the loss of use of his legs and the loss of use of his feet. The VA regulations interpreting this requirement in 1967 stated that "[d]eterminations must be based upon separate and distinct disabilities." 38 C.F.R. § 3.350(e)(2) (1967).

Concluding that the loss of use of a foot is a separate and distinct injury from the loss of use of the leg would allow any veteran who anatomically lost both of his legs under subsection (n) to automatically qualify for a higher rate under subsection (*o*) because he necessarily would also have anatomically lost both of his feet under subsection (*l*). This would render part of subsection (n) meaningless because veterans who anatomically lost both legs would always be covered by subsection (*o*). We also note that a separate regulation, in discussing the bilateral factor for combining disabilities, states: "The use of the term[] . . . 'legs' is not intended to distinguish between the . . . thigh, leg, and foot, but relates to the . . . lower extremities as a whole." 38 C.F.R. § 4.26(a) (1967). This distinction is equally applicable here. Thus, it is clear that an injury to a leg subsumes any injury to the foot, and that Guillory's interpretation is in error. The Veterans Court did not err in holding that the loss of use of a foot is subsumed within, and not separate and distinct from, the loss of use of a leg.

Guillory's second argument is that in the 1967 RO decision he was not awarded for other injuries, particularly the loss of use of his buttocks, which should have entitled him to an additional half-step increase under 38 C.F.R. § 3.350(f)(3), thus putting him at the rate between subsections (n) and (*o*) and entitling him to aid and attendance. To be eligible for a half-step increase, "the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions

establishing entitlement under 38 U.S.C. 314 (*l*) through (n)." 38 C.F.R. § 3.350(f)(3) (1967). Because Guillory was entitled to special monthly compensation under subsection (m) based on the loss of use of his legs, there is a question here whether, under this regulation, an injury to the legs is "separate and distinct and involve[s] different anatomical segments" from injuries to buttocks, hips, and trunk.

We need not resolve this question, though, since the premise of Guillory's argument misinterprets the relevant statutes. Because Guillory's claim requires a showing of CUE in the 1967 RO decision, we must assess his claim based on 1967 law. The law in 1967 required a rating under subsection (*o*) to qualify for aid and attendance. *See* 38 U.S.C. § 314(r) (1964). The law was not changed to allow aid and attendance based on an (n ½) + (k) rating until 1979. Veterans' Disability Compensation and Survivors' Benefits Amendments of 1979, Pub. L. No. 96-128, § 104, 93 Stat. 982, 984. Thus, even if Guillory were entitled to an (n ½) rating in the 1967 RO decision based on an additional half-step increase for his additional injuries, an issue we do not decide, he still would not be eligible for aid and attendance at that time.

Finally, we note that Guillory appears to urge on appeal two arguments not raised below. Guillory argues that awards should have been made in 1967 for the loss of use of both thighs, both buttocks, both hips, and the upper right torso, thus entitling him to two full-step increases to the rating under subsection (*o*) and, therefore, to aid and attendance. Guillory, however, did not raise this particular argument before the Veterans Court or the Board. So too the issue of whether Guillory was entitled to an additional half-step increase in 1979, after the statutory change, based on his buttocks or other injuries—thus giving him an award of (n ½) + (k) and entitling him to

aid and attendance due to the intervening change in law—was not raised or addressed below, nor is it clear how such a claim would be supported by a CUE theory. Because these arguments were not raised below, we do not address them here. If Guillory wishes to pursue either of these theories, he must first raise them with specificity before the RO.

All of Guillory's remaining arguments are disagreements with how the facts were weighed or how the law was applied to the facts in this particular case, which we do not have jurisdiction to review. 38 U.S.C. § 7292(d)(2). Based on our interpretations of the statutes at issue, we see no error in the Veterans Court opinion and therefore affirm.

**AFFIRMED**

COSTS

No costs.