# United States Court of Appeals for the Federal Circuit

---

**DIANA GARVEY,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1128

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-5059, Senior Judge Robert N. Davis.

---

Decided: August 27, 2020

---

ROBERT C. BROWN, JR., Norman, OK, for claimant-appellant.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by ETHAN P. DAVIS, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; JONATHAN KRISCH, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, SCHALL, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Diana Garvey is the widow of John P. Garvey. Mr. Garvey served in the Army from 1966 to 1970. Mrs. Garvey sought dependency and indemnity compensation and death pension benefits on the basis of Mr. Garvey's Army service. The Department of Veterans Affairs ("VA") denied Mrs. Garvey's claim because Mr. Garvey was discharged from the Army for "willful and persistent misconduct," and thus he was ineligible for benefits under the applicable regulation. *See* 38 C.F.R. § 3.12(d)(4). Mrs. Garvey now challenges the validity of Rule 3.12(d)(4) as being contrary to 38 U.S.C. § 5303.

We hold that the regulation is consistent with, and authorized by, the statute. Section 5303, contrary to Mrs. Garvey's assertion, is not the exclusive test for benefits eligibility. A former servicemember is ineligible for benefits unless he or she is a "veteran" as defined in 38 U.S.C. § 101(2). To be a "veteran" under section 101(2), a former servicemember must have been discharged "under conditions other than dishonorable." *Id.* The VA was authorized to define a discharge for willful and persistent misconduct as a discharge under "dishonorable conditions." *See* 38 C.F.R. § 3.12. We therefore affirm.

BACKGROUND

John P. Garvey served in the U.S. Army from February 1966 to May 1970. After training, Mr. Garvey was posted to Germany, where he served until November 1967. While in Germany, Mr. Garvey was punished under Article 15 of the Uniform Code of Military Justice for "disorderly

conduct" in an incident with a German taxi driver.[1]  J.A. 74.  However, Mr. Garvey's service record indicates that his "conduct" and "efficiency" while in Germany were "[e]xc[el-lent]."  J.A. 10.

Beginning in December 1967, Mr. Garvey was posted to Vietnam, where his record deteriorated significantly.  In June 1968, Mr. Garvey was convicted by special court-mar-tial of possessing four pounds of cannabis with intent to sell.  He was sentenced 90 days of confinement, ordered to forfeit a portion of his pay, and reduced in rank.  In Novem-ber 1968, Mr. Garvey was convicted by special court-mar-tial of being absent without leave ("AWOL") from September 9, 1968, to October 1, 1968.  In June 1969, he was convicted by special court-martial of being AWOL from April 18, 1969, to June 5, 1969.  For each of these convic-tions he was given a suspended sentence of confinement and ordered to forfeit a portion of his pay.  In April 1970, Mr. Garvey was convicted by special court-martial of being AWOL from February 16, 1970, to April 1, 1970.  For this conviction, he was sentenced to five months of confinement and again forfeited a portion of his pay.

Because of these events of misconduct, Mr. Garvey was discharged as unfit for service on May 13, 1970, with an "Undesirable Discharge."[2]  J.A. 32.  He waived considera-tion of his case before a board of officers and acknowledged that he "may be ineligible for many or all benefits as a vet-eran under both Federal and State laws."  J.A. 66.  On June 23, 1977, under the Special Discharge Review Program, a

---

[1]    Article 15 authorizes commanding officers to im-pose certain "disciplinary punishments for minor offenses without the intervention of a court-martial."  10 U.S.C. § 815(b).

[2]    We capitalize formal discharge status (e.g., Honor-able, Dishonorable, Undesirable, etc.).

procedure by which Vietnam-era servicemembers could have their discharge status upgraded if they met certain criteria, Mr. Garvey's discharge status was upgraded to "Under Honorable Conditions (General)." J.A. 35. However, on August 1, 1978, a Discharge Review Board found that Mr. Garvey would not have been entitled to an upgrade under generally applicable standards. The apparent effect of this finding was to prevent Mr. Garvey from receiving benefits on the basis of his upgraded status. *See* 38 U.S.C. § 5303(e); 38 C.F.R. § 3.12(h).

Claimant-appellant Diana Garvey married Mr. Garvey on November 10, 1979. Mr. Garvey died on August 13, 2010. On September 4, 2012, Mrs. Garvey applied for dependency and indemnity compensation and death pension benefits on the basis of Mr. Garvey's service.

On August 28, 2018, the Board of Veterans' Appeals ("Board") denied Mrs. Garvey's claim. The Board concluded that Mr. Garvey was ineligible for benefits because he was discharged for "willful and persistent misconduct," which under 38 C.F.R. § 3.12(d)(4) is a bar to benefits. On September 30, 2019, the United States Court of Appeals for Veterans Claims ("Veterans Court") affirmed the Board's decision, rejecting Mrs. Garvey's contention that the "willful and persistent misconduct" bar, section 3.12(d)(4), is contrary to statute.

Mrs. Garvey appealed to this court. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

On review of a decision from the Veterans Court, this court "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). This court "shall hold unlawful and set aside any regulation . . . that was relied upon in the

decision of the [Veterans Court] that [this court] finds to be . . . not in accordance with law." *Id.* § 7292(d)(1)(A).

I

On appeal Mrs. Garvey does not dispute that Mr. Garvey was discharged for willful and persistent misconduct, or that this rendered him ineligible for benefits under the regulation, but renews her argument that the "willful and persistent misconduct" bar is contrary to statute.

We have previously upheld the regulation in a two-paragraph non-precedential decision that affirmed the Veterans Court. *Camarena v. Brown*, 60 F.3d 843 (Fed. Cir. 1995). We now address the issue in a precedential decision.

We begin with a summary of the relevant statutes and regulations. For purposes of eligibility for veterans' benefits, section 101(2) defines a "veteran" as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2). Section 5303(a) lists several situations, such as discharge due to general court-martial or desertion, in which a former servicemember is barred from receiving veterans' benefits.[3] Section 5303 does not list "willful and persistent misconduct" as one of its statutory bars.

---

[3]    Specifically, section 5303(a) provides that:

The discharge or dismissal [1] by reason of the sentence of a general court-martial of any person from the Armed Forces, or the discharge of any such person [2] on the ground that such person was a conscientious objector who refused to perform military duty or refused to wear the uniform or otherwise to comply with lawful orders of competent military

Sections 101 and 5303 are implemented in 38 C.F.R. § 3.12.  As relevant here, Rule 3.12(c) provides that "[b]enefits are not payable" under specified conditions.  These include those listed in section 5303(a).[4]    Mirroring the

authority, or [3] as a deserter, or [4] on the basis of an absence without authority from active duty for a continuous period of at least one hundred and eighty days if such person was discharged under conditions other than honorable unless such person demonstrates to the satisfaction of the Secretary that there are compelling circumstances to warrant such prolonged unauthorized absence, or [5] of an officer by the acceptance of such officer's resignation for the good of the service, or [6] (except as provided in subsection (c)) the discharge of any individual during a period of hostilities as an alien, shall bar all rights of such person under laws administered by the Secretary [of the VA]. . . .

38 U.S.C. § 5303(a).

[4]    Section 3.12(c) states that:

Benefits are not payable where the former service member was discharged or released under one of the following conditions:

(1) As a conscientious objector who refused to perform military duty, wear the uniform, or comply with lawful order of competent military authorities.

(2) By reason of the sentence of a general court-martial.

(3) Resignation by an officer for the good of the service.

"conditions other than dishonorable" language of section 101(2), Rule 3.12(a) provides that:

> If the former service member did not die in service, pension, compensation, or dependency and indemnity compensation is not payable unless the period of service on which the claim is based was terminated by discharge or release <u>under conditions other than dishonorable</u>. (38 U.S.C. 101(2)). A discharge under honorable conditions is binding on the [VA] as to character of discharge.

38 C.F.R § 3.12(a) (emphasis added). Rule 3.12(d) further defines "dishonorable conditions," providing that:

> A discharge or release because of one of the offenses specified in this paragraph is considered to have been issued under dishonorable conditions. . . .
>
> > (4) <u>Willful and persistent misconduct</u>. This includes a discharge under other than honorable conditions, if it is determined that it was issued because of willful and persistent misconduct. A discharge because of a minor offense will not, however, be

---

(4) As a deserter.

(5) As an alien during a period of hostilities, where it is affirmatively shown that the former service member requested his or her release. See § 3.7(b).

(6) By reason of a discharge under other than honorable conditions issued as a result of an absence without official leave (AWOL) for a continuous period of at least 180 days. . . .

38 C.F.R. § 3.12(c).

> considered willful and persistent miscon-
> duct if service was otherwise honest, faith-
> ful and meritorious.

*Id.* § 3.12(d) (emphasis added).

Every servicemember is assigned a status—Honorable, Dishonorable, or an intermediate status—upon discharge. Under Rule 3.12, a former servicemember's discharge status might be, but is not necessarily, determinative of eligibility for benefits. A servicemember with an Honorable discharge is eligible for benefits because a discharge "under honorable conditions" is "binding" on the VA as to benefits eligibility. *Id.* § 3.12(a). A servicemember with a Dishonorable discharge is ineligible for benefits because a Dishonorable discharge is a discharge by sentence of a general court-martial—a bar to benefits under Rule 3.12(c)(2). A former servicemember's discharge status is not determinative, however, when it is neither "under honorable conditions" nor Dishonorable. The military has issued several types of discharges of this sort over the years, including Undesirable, Ordinary, and Without Honor discharges. Bradford Adams & Dana Montalto, *With Malice Toward None: Revisiting the Historical and Legal Basis for Excluding Veterans from "Veteran" Services*, 122 Penn. St. L. Rev. 69, 80 (2017). For servicemembers discharged with one of these intermediate statuses, the character of their service governs. The VA deems servicemembers with an intermediate discharge status who were discharged for "willful and persistent misconduct" to have been discharged under "dishonorable conditions," rendering them ineligible for veterans' benefits.[5] *See* 38 U.S.C. § 3.12(d)(4).

---

[5] Discharges for "[m]utiny," "spying," and "[a]cceptance of an undesirable discharge to escape trial by general court-martial" are also deemed by the VA to "have

## II

Mrs. Garvey contends that the "willful and persistent misconduct" bar in Rule 3.12(d) is contrary to statute. Mrs. Garvey argues that because section 5303(a) specifies six conditions under which a former servicemember is ineligible for benefits, it was improper for the VA to add a seventh, unlisted "willful and persistent misconduct" bar. We disagree.

Neither section 5303 nor any other statute provides that section 5303 contains the exclusive list of conditions for benefits eligibility. On the contrary, the definition of "veteran" in section 101(2) expressly limits benefits to those discharged "under conditions other than dishonorable." 38 U.S.C. § 101(2). The central question here is the meaning of this language in section 101(2).

In section 101(2), Congress chose not to use a "Dishonorable discharge" bar. Instead, it used the phrase "conditions other than dishonorable." Unlike a Dishonorable discharge, the phrase "conditions other than dishonorable" is not a term of art in the military.[6] In view of the ambiguity of that phrase, we turn to the statute's legislative history to determine its meaning. *Adm'r, Fed. Aviation Admin. v. Robertson*, 422 U.S. 255, 263 (1975) (reasoning

---

been issued under dishonorable conditions." 38 C.F.R. § 3.12(d).

[6] There is a statement in the Senate floor debate on the provision now present in section 101(2) that the phrase "conditions other than dishonorable" was "well-understood," 90 Cong. Rec. 3077 (1944), but this appears only to suggest that the core concept was well understood, not that the full scope of the term was well understood. Indeed, as described below, Congress left it to the VA to define the term by regulation.

that an "unclear and ambiguous" statute "compell[ed] resort to the legislative history").

Section 5303 and the "conditions other than dishonorable" requirement of section 101(2) trace their origin to the Servicemen's Readjustment Act of 1944 ("the G.I. Bill"). Pub. L. No. 78-346, 58 Stat. 284; *see generally* Adams & Montalto, *supra*, at 84–85.  The G.I. Bill provided a variety of educational, financial, and other benefits to former servicemembers.  However, not all former servicemembers would be eligible.  In the version of the G.I. Bill first introduced in Congress, section 300 barred the provision of benefits to servicemembers discharged for any of several enumerated reasons, including discharge: (1) by sentence of a court-martial (e.g., a Dishonorable discharge); (2) for being a conscientious objector; (3) as a deserter; or (4) of an officer by resignation for the good of the service.  S. 1767, 78th Cong. § 300 (as introduced, Mar. 13, 1944).[7]

---

[7]    Specifically, as relevant here, section 300 stated that:

> The discharge or dismissal by reason of the sentence of a general court-martial of any person from the military or naval forces, or the discharge of any such person on the ground that he was a conscientious objector who refused to perform military duty or refused to wear the uniform or otherwise to comply with lawful orders of a competent military authority, or as a deserter, or of an officer by the acceptance of his resignation for the good of the service, shall bar all rights of such person, based upon the period of service from which he is so discharged or dismissed, under any laws administered by the [VA] . . . .

S. 1767, 78th Cong. § 300 (as introduced, Mar. 13, 1944).

The Senate committee amended the bill to add a new section, section 1603, while retaining the statutory bars in section 300.  New section 1603 provided that:

> A discharge or release from active service under conditions other than dishonorable shall be a prerequisite to entitlement to veterans' benefits provided by this [A]ct . . . .

S. 1767 § 1603 (as reported to the Senate, Mar. 18, 1944). The committee report explained the dual purposes of this provision: to provide benefits to deserving servicemembers with "honest and faithful or otherwise meritorious" service even if they did not receive Honorable discharges, but to deny benefits to "unworthy" former servicemembers even if they were not given a Dishonorable discharge.  S. Rep. No. 78-755, at 15 (1944).  Specifically, the report explained:

> The purpose of this section is to provide a uniform basic entitlement contingent upon the type of release from active military or naval service.  It provides that in order to be entitled to any veterans' benefits provided by this act . . . a veteran must have been discharged or released from active service under conditions other than dishonorable . . . . The amendment would remove a discrepancy in existing law which has been found to be highly undesirable, . . . relating to hospitalization whereby a veteran not dishonorably discharged may be entitled to hospitalization benefits.  In practice it has been found that this permits most unworthy cases to be hospitalized often to the detriment of persons honorably discharged or discharged under conditions other than dishonorable.  It is believed that the hospital facilities of the Veterans' Administration should be maintained for veterans whose

service was honest and faithful or otherwise meritorious.

Further, the amendment will correct hardships under existing laws requiring honorable discharge as prerequisite to entitlement. <u>Many persons who have served faithfully and even with distinction are released from the service for relatively minor offenses, receiving a so-called blue discharge if in the Army or a similar discharge without honor if in the Navy. It is the opinion of the committee that such discharge should not bar entitlement to benefits otherwise bestowed unless the offense was such, as for example those mentioned in section 300 of the bill, as to constitute dishonorable conditions.</u> A dishonorable discharge is effected only as a sentence of court martial, but in some cases offenders are released or permitted to resign without trial—particularly in the case of desertion without immediate apprehension. In such cases benefits should not be afforded as the conditions are not less serious than those giving occasion to dishonorable discharge by court martial.

*Id.* (emphasis added).

The committee's amendment was agreed to on the Senate floor. 90 Cong. Rec. 3075 (1944). There, the sponsor of the G.I. Bill,[8] Senator Champ Clark, similarly explained the purpose of the "conditions other than dishonorable" standard on the Senate floor where the committee

---

[8]    "It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 585 (1988) (quoting *N.L.R.B. v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 66 (1964)).

amendment was adopted. He reasoned that a person with poor conduct in the service might nevertheless be discharged without a court-martial because the military "did not want to take the trouble to court martial them and give them what they deserved—a dishonorable discharge." *See* 90 Cong. Rec. 3077. To Senator Clark, such a servicemember should not receive benefits. Senator Clark stated that the "conditions other than dishonorable" language meant that:

> if a man's service has been dishonorable, if he has been convicted of larceny or any other crime or has been convicted of chronic drunkenness or anything else one might think of, the [VA] will have some discretion with respect to regarding the discharge from the service as dishonorable.

*Id.* (emphasis added).[9] The House of Representatives version of the G.I. Bill would have restricted benefits to those

---

[9]    In the same vein, a later report of the President's Commission on Veterans' Pensions, chaired by General Omar Bradley (VA Administrator from 1945 to 1947), explained that:

> The Congress did not want to use the words "honorably discharged" or "discharged under honorable conditions," because it was felt that such an eligibility requirement was too restrictive. Neither did Congress want to use the words "not dishonorably discharged" because such words would have been too broad and opened the door to persons who were administratively discharged for conduct that was in fact dishonorable. The controversy was finally resolved by adopting the words "conditions other than dishonorable." . . . . The eligibility of persons discharged with [neither Honorable nor

discharged "under honorable conditions." S. 1767 § 1503 (as passed by the House, May 18, 1944). However, on the recommendation of the conference committee, both houses ultimately adopted the Senate's "conditions other than dishonorable" standard. H.R. Rep. No. 78-1624, at 26 (1944); 90 Cong. Rec. 5754 (June 12, 1944); 90 Cong. Rec. 5847 (June 13, 1944). The G.I. Bill was thus enacted with the section 300 bars and the "conditions other than dishonorable" requirement.

In enacting the G.I. Bill, Congress intended for benefits to be provided to former servicemembers "whose service was honest and faithful or otherwise meritorious," even if they were not discharged with Honorable status. S. Rep. No. 78-755, at 15. However, benefits were not to be provided to former servicemembers whose misconduct was "not less serious than those giving occasion to dishonorable discharge by court-martial," even if they did not receive a Dishonorable discharge. *Id.* Congress provided the VA with "discretion," 90 Cong. Rec. 3077, in determining the "conditions" under which a former servicemember was "[]worthy" of benefits, S. Rep. No. 78-755, at 15. Congress did not intend the specific provisions of section 300 to be the sole bar to veterans' benefits.

Though the section 300 bars are now codified at 38 U.S.C. § 5303(a)[10] and the "conditions other than

Dishonorable] discharges was left to a determination by the [VA] based on the pertinent facts . . . .

President's Comm'n on Veterans' Pensions, Staff of H. Comm. on Veterans' Affairs, 84th Cong., Rep. On Discharge Requirements for Veterans' Benefits 15–16 (Comm. Print 1956).

[10] In a 1958 reorganization of veterans' benefits statutes, section 300 was codified at 38 U.S.C. § 3103(a). Pub.

dishonorable" requirement is codified at 38 U.S.C. § 101(2),[11] the meaning of and relationship between these statutory provisions have not materially changed since the G.I. Bill's enactment in 1944. Whether the statute is interpreted to expressly delegate to the VA the interpretation of "conditions other than dishonorable," or instead the delegation is implicit, we conclude that the VA has authority to define the term consistent with the Congressional purpose. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (discussing "express delegation" and "implicit" delegation of an interpretive question to an agency).

Since 1946, VA regulations have provided that a discharge for "willful and persistent misconduct" was under "dishonorable conditions," and thus was a bar to benefits. 11 Fed. Reg. 12,869, 12,878 (Oct. 31, 1946). The bar has existed in its current form—codified at 38 C.F.R.

---

L. No. 85-857 § 3103, 72 Stat. 1105, 1230 (1958). In 1991, section 3103 was renumbered as 5303. Pub. L. No. 102-40, Title IV, § 402(b)(1), 105 Stat. 187, 238–39 (1991).

[11] Section 606 of the House version of the 1944 G.I. Bill provided that "[t]he term 'veteran' as used in this title shall mean a person who served in the active service of the armed forces during a period of war in which the United States has been or is engaged and who has been discharged or released therefrom under honorable conditions." S. 1767 § 606 (as passed by the House, May 18, 1944). At conference committee, section 606 was moved to section 607 and revised to use the "under conditions other than dishonorable" standard. H.R. Rep. No. 78-1624, at 13. Section 607 was part of the enacted G.I. Bill. G.I. Bill § 607. The current definition of "veteran," codified at 38 U.S.C. § 101, derives from section 607 and was enacted in the 1958 reorganization of veterans' benefits statutes. Pub. L. 85-857 § 101, 72 Stat. at 1106.

§ 3.12(d)(4)—since 1963.  28 Fed. Reg. 123 (Jan. 4, 1963).
The "willful and persistent misconduct" bar is consistent
with the statute in denying benefits to those who commit-
ted serious misconduct even if they did not receive a Dis-
honorable discharge.

Our conclusion is further supported by Congress' 1977
amendment to what is now section 5303.  On April 5, 1977,
President Carter initiated the Special Discharge Review
Program.  Under the Program, as relevant here, a Vi-
etnam-era servicemember with a discharge "Under Other
than Honorable Conditions" could obtain an upgrade to a
"general discharge under honorable conditions" if a Dis-
charge Review Board found that "such action is appropri-
ate based on all of the circumstances of a particular case
and on the quality of the individual's civilian records since
discharge." *Discharge Review Boards*, 42 Fed. Reg. 21,308,
21,310 (Apr. 26, 1977).[12]  Because Rule 3.12(a) provides
that "[a] discharge under honorable conditions is binding
on the [VA] as to character of discharge," some service-
members who were ineligible for benefits (due, for example,
to the "willful and persistent misconduct" bar), would be-
come eligible because of their upgrade under the Program.

Congress concluded that this aspect of the Program
was unfair because it upgraded Vietnam-era servicemem-
bers but not other servicemembers, and because it unfairly
allowed those with problematic service records to obtain
veterans benefits.  S. Rep. No. 95-305, at 3 (1977); 123
Cong. Rec. 28,193, 28,198 (Sep. 8, 1977).  Because of these
concerns, in 1977, Congress passed an "Act to deny entitle-
ment to veterans' benefits to certain persons who would
otherwise become so entitled solely by virtue of the

---

[12]   Mr. Garvey's upgrade to an "Under Honorable Con-
ditions (General)" discharge status was under the Special
Discharge Review Program.

administrative upgrading under" the Program.　Pub. L. No. 95-126, 91 Stat. 1106 ("the 1977 Act").　The 1977 Act provided, in relevant part, that servicemembers upgraded to "a general or honorable discharge" under the Program were ineligible for veterans benefits unless, after a case-by-case review by a Discharge Review Board, the VA determined that the veteran would have received the upgraded discharge status even under generally applicable standards.　*Id.*[13]

The structure and purpose of the 1977 Act support the "willful and persistent misconduct" bar.　The Act presupposes that a servicemember discharged under less than honorable conditions would, but for his or her upgrade under the Program, not have been eligible for benefits in at least some circumstances. At the time, the "willful and persistent misconduct" bar had been in force for over three decades.　*See* 11 Fed. Reg. at 12,878 (amending regulation to add the "willful and persistent misconduct" bar).　And

---

[13]　More specifically, the 1977 Act's exclusion is now codified at 38 U.S.C. § 5303(e)(2), which provides:

Notwithstanding any other provision of law . . . no person discharged or released from active military, naval, or air service under other than honorable conditions who has been awarded a general or honorable discharge under revised standards for the review of discharges . . . as implemented on or after April 5, 1977, under the Department of Defense's special discharge review program . . . , shall be entitled to benefits under laws administered by the Secretary except upon a determination, based on a case-by-case review, under [uniform and historically consistent] standards . . . that such person would be awarded an upgraded discharge under such standards.

Congress was well aware that if the servicemember had been discharged for "willful and persistent misconduct" he or she would not be not entitled to veterans' benefits. *See, e.g.*, S. Rep. No. 95-305, at 27 (quoting 38 C.F.R. § 3.12 (1977)); H.R. Rep. No. 95-580, at 9 (same); *Eligibility for Veterans' Benefits Pursuant to Discharge Upgradings: Hearing Before the Committee on Veterans' Affairs*, 95th Cong. 354–55 (1977) (statement of Sen. Thurmond) (same). That Congress required an upgraded servicemember to remain subject to the VA's rules under his or her original discharge status (absent a specific dispensation) suggests approval of those rules, including the "willful and persistent misconduct" bar.

We reject Mrs. Garvey's challenge to the "willful and persistent misconduct" regulatory bar.

### CONCLUSION

We uphold the VA's interpretation that a discharge for "willful and persistent misconduct" is, under the statute, "issued under dishonorable conditions." See 38 C.F.R. § 3.12(d). Mr. Garvey's discharge was for willful and persistent misconduct, so Mrs. Garvey is not entitled to veterans' benefits. The decision of the Veterans Court is

**AFFIRMED**